UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| RODOLFO T. ASUNCION, JR., | CIV. NO. 23-00119 LEK-KJM |
| Plaintiff, | |
| vs. | |
| THE HONORABLE LLOYD J. AUSTIN, III, SECRETARY OF DEFENSE | |
| Defendant. | |

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COMPLAINT [ECF NO. 1], OR IN THE ALTERNATIVE FOR PARTIAL SUMMARY JUDGMENT**

Before the Court is Defendant the Honorable Lloyd J. Austin, III, Secretary of Defense's ("Defendant") Motion to Dismiss Complaint [ECF No. 1], or in the Alternative for Partial Summary Judgment ("Motion"), filed on June 6, 2023. [Dkt. no. 8.] Plaintiff Rodolfo T. Asuncion, Jr. ("Asuncion") filed his memorandum in opposition to the Motion on July 18, 2023, and Defendant filed his reply on July 25, 2022. [Dkt. nos. 14, 16.] The Court finds this matter suitable for disposition without a hearing pursuant to Rule LR7.1(c) of the Local Rules of Practice for the United States District Court for the District of Hawaii ("Local Rules"). Defendant's Motion is hereby granted for the reasons set forth below.

## BACKGROUND

Asuncion filed his Complaint on March 3, 2023. [Dkt. no. 1.] Asuncion served in the National Guard and during his service he was deployed to Iraq. See id. at ¶¶ 24, 31. Asuncion was a Defense Logistics Agency ("DLA") civilian employee for thirty years. DLA is a part of the United States Department of Defense ("DOD"). See id. at ¶¶ 2-3. Asuncion alleges he "is a handicapped person within the meaning of the Rehabilitation Act of 1973 [('the Rehab Act')] by reason of his impairments that makes it difficult and burdensome for [him] to complete his work tasks without a reasonable accommodation . . . ." [Id. at ¶ 6.] Asuncion's direct supervisor was Colleen R. Weaver ("Weaver"). [Id. at ¶ 8.] He asserts that, before Weaver became his direct supervisor, previous direct supervisors "informally reasonably accommodated [his] qualifying disabilities . . . on an 'as needed' basis." [Id. at ¶ 14.] After Weaver became Asuncion's direct supervisor, Asuncion states Weaver implemented informal policies that failed to reasonably accommodate his handicap. See id. at ¶¶ 16-19. After Weaver learned about Asuncion's disability, he informed Weaver that he previously provided the required paperwork to the former director and supervisor. Asuncion states that, although Weaver asserts she never received the paperwork establishing Asuncion's disability, the paperwork is

2

located in Asuncion's Electronic Official Personnel File
("EOPF").  <u>See</u> <u>id.</u> at ¶¶ 22–27.

In one alleged incident, Weaver asked Asuncion about
his disability when Asuncion asked her for assistance with a
task and Weaver told Asuncion to do it himself.  Asuncion
informed Weaver that the noise from the machine needed to
perform the task negatively impacts his post-traumatic stress
disorder ("PTSD").  <u>See</u> <u>id.</u> at ¶¶ 28–31.  Weaver asked Asuncion
for documentation regarding his disability "instead of checking
for a record of [his] impairments and informal reasonable
accommodation."  [<u>Id.</u> at ¶ 32.]  Weaver "then directed
[Asuncion]'s colleague to assist him."  [<u>Id.</u> at ¶ 33.]  In
February 2019, during a site visit from Mark Shadinger
("Shadinger") – a Production Manager and Asuncion's third-level
supervisor – Asuncion told Shadinger about his PTSD.  Shadinger
asked Asuncion for verifying paperwork, and Asuncion told
Shadinger that he provided the paperwork to pervious management.
According to Shadinger, he was not able to find any previous
paperwork in Asuncion's file.  <u>See</u> <u>id.</u> at ¶¶ 34–36.

Asuncion alleges he asked Weaver for a reasonable
accommodation when he requested a desk and a wagon to help him
with organization.  Weaver denied his request.  <u>See</u> <u>id.</u> at
¶¶ 52–53.  Asuncion asserts Weaver falsely claimed that he
created a hostile work environment for her.  He further states

3

Weaver made hostile and derogatory statements about disabled veterans to Asuncion.  See id. at ¶¶ 58-59.  Asuncion states that, on December 17, 2019, Weaver asked him if he was carrying any weapons or illegal drugs.  See id. at ¶ 70.  In December 2019, Asuncion filed an Equal Employment Opportunity ("EEO") claim on the basis of disability discrimination.  See id. at ¶ 76.

On February 11, 2020, Weaver allegedly called base police on Asuncion, but the police did not find him "to be a danger to the health and safety of himself or others."  [Id. at ¶ 71-72 (footnote omitted).]  On March 2, 2020, Weaver and Shadinger allegedly berated Asuncion for "jump[ing] the chain of command with his complaints."  [Id. at ¶ 73.]  On September 14, 2020, Weaver informed Asuncion that he did not receive an annual cash or time-off award because he was rated poorly on his performance evaluations, although his performance evaluations showed positive ratings.  See id. at ¶ 74 & n.3.

On December 10, 2020, DLA issued a written acknowledgment that Asuncion could file a formal complaint.  On February 21, 2021, Asuncion was placed on paid administrative leave without details of any alleged misconduct.  See id. ¶ 77, ¶ 78 & n.4.  On February 26, 2021, Asuncion's access to classified information was suspended because a report of investigation allegedly substantiated claims that Asuncion made

4

threatening statements at work in December 2019, January 2020, and March 2020.  See id. at ¶¶ 81, 86.  On March 16, 2021, Asuncion was placed on an indefinite suspension without pay.  On April 21, 2021, Asuncion received a Notice of Decision-Indefinite Suspension (Non-Disciplinary), which was his official notice that he was placed on indefinite suspension without pay for a failure to maintain access to classified and sensitive information.  See id. at ¶ 88.  A final agency decision relating to Asuncion's EEO complaint was issued on November 4, 2022.  See id. at ¶ 4.

Asuncion appears to allege a discrimination claim against Defendant for a failure to provide meaningful and effective accommodations in violation of Section 504 of the Rehab Act.  See id. at ¶ 110.

<u>**DISCUSSION**</u>

In the Motion, Defendant argues Asuncion cannot bring claims related to the revocation of his security clearance because they are not subject to judicial review.  See Motion, Mem. in Supp. at 10-13.  Asuncion states he "is not challenging the suspension of his security clearance in this forum."  [Mem. in Opp. at 11 (emphasis omitted).]  Specifically, Asuncion clarifies that he "is challenging the underlying discriminatory and retaliatory conduct by his first level supervisor, Colleen Weaver, that occurred prior to the suspension of his security

clearance." [Id.] Accordingly, the only claim before the Court is Asuncion's discrimination claim, which was adjudicated through the EEO process, and a final agency decision was issued on November 4, 2022. The final agency decision found that Asuncion "failed to establish that he was subjected to harassment and disparate treatment on the bases of his disability (Mental – PTSD), or reprisal for the filing of the instant complaint." [Defendant's concise statement of facts in support of the Motion, filed 6/6/23 (dkt. no. 9) ("Defendant's CSOF"), Decl. of Joseph A. Somerville III ("Somerville Decl."),[1] Exh. A (CUI Final Agency Decision of the Defense Logistics Agency in the Discrimination Complaint of Rodolfo Asuncion (DLAF-21-0424) ("FAD")), at 1.]

Defendant argues the Complaint is untimely because it was not filed within ninety days after the FAD was received. See Motion, Mem. in Supp. at 15–18. Asuncion contends he and his counsel were unable to open the FAD until December 5, 2022 and therefore the Complaint is timely because that was the date that the filing window began. See, e.g., Mem. in Opp. at 5–6. Asuncion also argues that, even if the filing window began

---

[1] Joseph A. Somerville III ("Somerville") was a Complaints Manager at DLA's Headquarters EEO Office from August 2022 to March 2023. See Somerville Decl. at ¶ 1.

earlier than December 5, 2022, the filing of the Complaint should be equitably tolled.  See. id. at 10.

## I.   <u>Facts Regarding the FAD</u>

The November 4, 2022 FAD was transmitted via email to Asuncion and Asuncion's counsel – Shawn A. Luiz, Esq. – on November 8, 2022.  See Somerville Decl., Exh. B (CUI Certificate of Service); see also id., Exh. C (email dated 11/8/22 to Somerville confirming the FAD was successfully sent to Asuncion and Mr. Luiz); id., Exh. D (email, dated 11/8/22, from Somerville to Asuncion and Mr. Luiz, transmitting the passphrase to access the encrypted file where the FAD was located).

On November 11, 2022, Mr. Luiz emailed Somerville stating that he could not access the encrypted file to retrieve the FAD and asked for it to be resent in a different format. See Asuncion's concise statement in opposition to the Motion, filed 7/18/23 (dkt. no. 15) ("Asuncion's CSOF"), Decl. of Counsel ("Luiz Decl."), Exh. 1 (compilation of emails to or from Mr. Luiz regarding the FAD) at PageID.198.  On November 14, 2022, Somerville emailed Mr. Luiz stating that the file expired, and he would resend a file.  See id. at PageID. 200.  Somerville emailed Asuncion and Mr. Luiz another passphrase to access the encrypted file for the FAD on November 14, 2022.  See id. at PageID.203.  Mr. Luiz replied to Somerville later that same day

stating he still could not access the file.  See id. at
PageID.206, PageID.208.

On November 21, 2022, Mr. Luiz emailed Somerville
stating that he could not open the file and requesting that the
FAD be sent through the United States mail.  See id. at
PageID.210.  On December 3, 2022, Mr. Luiz emailed Kimberly
Lewis ("Lewis")[2] and Somerville stating that he had not been able
to open the FDA file and requesting that it be sent in a non-
encrypted PDF format.  See id., Exh. 2 (additional compilation
of emails that Mr. Luiz sent or received) at PageID.217.  Also
on December 3, 2022, Mr. Luiz emailed Bruce McCarty – DLA's
General Counsel – asking for a copy of the FDA.  See id., Exh. 3
(email from Mr. Luiz to Bruce McCarty dated 12/3/22, forwarding
Mr. Luiz's 12/3/22 email to Lewis and Somerville).

On December 5, Lewis replied to Mr. Luiz, sending a
copy of the FAD, and Lewis asking him to acknowledge its
receipt.  [Id., Exh. 2 at PageID. 218.]  Later that same day,
Mr. Luiz replied to Lewis confirming receipt of the FAD and
asking Lewis to confirm that the statutory timelines to address
the FAD would start on December 5, 2022.  See id. at PageID.221.
Mr. Luiz emailed Lewis again on December 13, 2022 asking her to

---

[2] Lewis is the Deputy Director of DLA's Equal Employment
Opportunity and Diversity and Inclusion Office.  See, e.g., Luiz
Decl., Exh. 2 at PageID.218.

address the question he asked in the December 5, 2022 email.

See id. at PageID.225.  On December 14, 2022, Lewis replied to

Mr. Luiz stating that, under 29 C.F.R. § 1614, the time begins

to run when Mr. Luiz received the FAD and would not issue a new

certificate of service.  See id. at PageID.224.  On December 15,

2022, Mr. Luiz replied to Lewis's email with "[t]hank you!"

[Id. at PageID.229.]

    Asuncion also attempted to open the encrypted files

when they were sent in November, but he states he was unable to

open them.  [Asuncion CSOF, Decl. of Rodolfo T. Asuncion, Jr. at

¶ 5.]  Asuncion also states that DLA sent him copies of the

Record of Investigative file through the United States mail, and

he does not understand why DLA did not mail a copy of the FAD.

[Id. at ¶ 9.]

## II.  **Time to File Under the Rehab Act**

> The Rehabilitation Act states that claims
> under the Act are governed by the same rights and
> procedures available in Title VII employment
> discrimination cases against federal defendants.
> 29 U.S.C. § 794a(a)(1).  Relevant here is the
> requirement that civil actions be filed "within
> ninety days after the [agency's] giving of [final
> decision] notice."  42 U.S.C. § 2000e-5(f)(1).
> The implementing regulations state that such a
> civil action must be brought "[w]ithin 90 days of
> receipt of the agency final action . . . ."  29
> C.F.R. § 1614.407(a). . . .

Lax v. Mayorkas, 20 F.4th 1178, 1182 (7th Cir. 2021) (some

alterations in Lax).  As the Seventh Circuit noted, "there is

9

potential for discrepancy between these two texts (the statute
says the filing window starts with the agency's 'giving' of
notice of the final decision, while the regulations state that
the window starts only upon the claimant's 'receipt' of the
agency's final decision) . . . ."  Id. (citation omitted).

"Although not precisely defined in the statute,
regulations, or Ninth Circuit case law, other circuits have held
that 'receipt' of final agency action is actual or constructive
**notice of the action**, and that it need not be by mail, or even
written."  McCoy v. Dep't of Army, 789 F. Supp. 2d 1221, 1227
(E.D. Cal. 2011) (emphasis added) (citing Ebbert v.
DaimlerChrysler Corp., 319 F.3d 103, 116 (3d Cir. 2003) ("[W]e
hold that oral notice can suffice to start the 90-day
period.")).

This principle also comports with other cases.  The
facts in Lax are similar to the instant case.  There, the
plaintiff – Brian Lax ("Lax") – initiated an EEO complaint
against his employer, the Federal Emergency Management Agency
which is a part of the Department of Homeland Security ("DHS").
Lax, 20 F.4th at 1180.  On July 15, 2019, the DHS office for
Civil Rights and Civil Liberties issued its final decision
regarding the Lax's discrimination claim.  The final decision
was sent to Lax by email on July 17, 2019.  Id.  The email
informed Lax that the final decision was rendered and attached

10

to the email was a password-protected document that included,
*inter alia*, a copy of the final decision and a certificate of
service.  Another email was sent a minute later with the
password to open the document.  See id. at 1180-81.

Lax opened and read the emails that day but stated he
was unable to open the file that day due to purported technical
difficulties.  Lax was able to open the document and read the
final agency decision the next day, on July 18, 2019.  Lax filed
his lawsuit in federal court on October 16, 2019, which was
ninety-one days after he received the July 17, 2019 email.  See
id. at 1181.

"The determinative issue" was "whether Lax's mere
receipt of the email commence[d] the filing window, or whether
he must have opened and read the attachment to that email to
commence the filing window."  Id. at 1182.  The Seventh Circuit
held that Lax's "filing window for purposes of 42 U.S.C.
§ 2000e-5(f)(1) and 29 C.F.R. § 1614.407 commenced when he
received the email, not when he opened the attachment."  Id.

The Seventh Circuit reasoned as follows:

> The Court has further clarified that
> receiving the notice via traditional mail,
> without opening or reading that notice, is
> sufficient to trigger the beginning of the filing
> period.  See Threadgill v. Moore U.S.A., Inc.,
> 269 F.3d 848, 849-50 (7th Cir. 2001).  In
> Threadgill, the plaintiff received the right-to-
> sue notice via traditional mail but then set it
> aside without opening it or mentioning it to his

11

       attorney for nearly seven months.  Id. at 849.
This, the Court held, qualified as "actual
receipt" of the notice even though the plaintiff
did not read it.  Id. at 850.

          Like the plaintiff in Threadgill, Lax asks
the Court to refrain from commencing the filing
window upon his receipt of the notice, simply
because he did not **read** the notice until later.
But the Court rejected this argument in
Threadgill and Lax offers no reason why that
case's holding does not foreclose his arguments
here.  It is true that, unlike the Threadgill
plaintiff, Lax asserts that he was unable—rather
than simply unwilling—to read the notice on the
day he received it.  But under the present set of
circumstances, this distinction does not warrant
a different result.  Lax concedes that he read
the body of the email, which clearly indicated
that his final agency decision was attached.  He
therefore knew at that time (without needing to
open the attachment) that what he had received
was the final agency decision.  Furthermore, the
certificate of service stated unambiguously that
"it shall be presumed that the parties received
the foregoing on the date indicated below
[07/17/2019] . . . ."  If he believed this
presumption to be incorrect, he or his attorney
could have clarified the date of receipt at any
time in the ninety days leading up to the filing
deadline.  Neither did so.

Id. at 1182–83 (alterations and emphasis in Lax).

       Another case similar to Lax and the present case is

also instructive.  In McDonald v. Saint Louis University, the

plaintiff – Rachel McDonald ("McDonald") – filed a

discrimination charge with the Missouri Commission of Human

Rights and the Equal Employment Opportunity Commission ("EEOC")

on September 27, 2021.  See Case No. 4:22-cv-01121-SRC, 2023 WL

4262539, at *1 (E.D. Mo. June 29, 2023), *appeal filed*, No. 23-

2624 (8th Cir. July 13, 2023).  "The EEOC closed its
investigation on May 10, 2022 and uploaded a document to the
EEOC Public Portal titled: 'Notice of Right to Sue (Issued on
Request).'"  Id. (citations omitted).  On the same day,
McDonald's counsel received an email from the EEOC stating that
a document was added to the EEOC Public Portal regarding
McDonald's EEOC case.  See id.  On May 18, 2022, the EEOC sent
McDonald's counsel an email with a subject line stating
"REMINDER: Important Document for EEOC Charge 28E-2022-00020."
Id. (emphasis in original) (quotation marks and citations
omitted).  The body of that email explained that the EEOC issued
a decision, but the email did not contain an attachment of the
decision.  See id.  McDonald and her counsel lost access to the
EEOC portal around January or February 2022 and, thus, could not
access the decision.  On June 21, 2022, McDonald's counsel
emailed an EEOC employee requesting the right-to-sue letter and
another EEOC employee emailed McDonald's counsel a copy of the
May 10, 2022 right-to-sue letter via email on June 28, 2022.
McDonald filed her complaint on September 23, 2022.  See id.

    The district court stated:

        Despite the wording of the statute, which
        provides that "within ninety days after the
        **giving** of such notice a civil action may be
        brought" (emphasis added), the Eighth Circuit has
        described 42 U.S.C. § 2000e-5(f)(1) as requiring
        a plaintiff to file a civil action within ninety
        days after **receipt** of a right-to-sue letter from

13

the EEOC.  See, e.g., Walker v. Tyson Foods Inc,
723 F. App'x 387, 388 (8th Cir. 2018) (citing 42
U.S.C. § 2000e-5(f)(1)).  But see Hales [v.
Casey's Mktg. Co.], 886 F.3d [730,] 736 [(8th
Cir. 2018)] ("Title VII allows an aggrieved party
to bring a civil action within ninety days after
notice of dismissal is given by the EEOC."
(citing 42 U.S.C. § 2000e-5(f)(1)).  This reading
of the statute is consistent with the
implementing regulations, which provide that a
plaintiff may bring a civil action "[w]ithin 90
days of **receipt** of the agency final
action. . . ."  29 C.F.R. § 1614.407(a) (emphasis
added).  It is also consistent with the wording
of § 2000e-16(c), which provides that a federal
employee may bring a civil action "[w]ithin 90
days of **receipt** of notice of final action. . . ."
42 U.S.C. § 2000e-16(c) (emphasis added).

        Other courts agree that "receipt" of notice
starts the ninety-day clock.  See, e.g., Lax v.
Mayorkas, 20 F.4th 1178, 1182 (7th Cir. 2021)
("Though there is potential for discrepancy
between these two texts (the statute says the
filing window starts with the agency's 'giving'
of notice of the final decision, while the
regulations state that the window starts only
upon the claimant's 'receipt' of the agency's
final decision), this Court has held that the
filing window begins when a claimant or his
attorney 'actually receives' the right-to-sue
notice that accompanies the agency's final
decision."); Lynn v. W. Gillette, Inc., 564 F.2d
1282, 1286 n.3 (9th Cir. 1977) ("It is the
receipt of a Right to Sue letter, not its
dispatch, which sets the beginning of ninety-day
period."); Hammel v. Marsh USA Inc., 79 F. Supp.
3d 234, 242 (D.D.C. 2015) ("[T]he 90-day clock
begins the day after the date of receipt of the
EEOC right to sue letter.").  And the Supreme
Court has held that "receipt" includes receipt by
a plaintiff's attorney or the attorney's office.
See Irwin v. Dep't of Veterans Affs., 498 U.S.
89, 92-93 (1990) (citing 42 U.S.C. § 2000e-
16(c)); see also id. ("Under our system of
representative litigation, each party is deemed
bound by the acts of his lawyer-agent and is

14

considered to have 'notice of all facts, notice
of which can be charged upon the attorney.'"
(quoting <u>Link v. Wabash R. Co.</u>, 370 U.S. 626, 634
(1962))).

<u>Id.</u> at *2-3 (emphases and some alterations in <u>McDonald</u>).

Moreover, in comparing <u>Lax</u> to its case, the district

court in <u>McDonald</u> stated:

Although in <u>Lax</u> the final agency decision
was attached to the email, district courts have
held that an email providing a link to access the
final agency decision on the EEOC's public portal
also starts the ninety-day clock.  <u>See, e.g.,</u>
<u>McNaney v. Sampson & Morris Grp., Inc.</u>, No. 2:21-
CV-1809, 2022 WL 1017388, at *3 (W.D. Pa. Apr. 5,
2022) (holding that the ninety-day period began
to run when the EEOC notified the plaintiff's
counsel via email that a decision had been made
and provided a link to access the decision); <u>see</u>
<u>also</u> <u>Paniconi v. Abington Hosp.-Jefferson Health</u>,
604 F. Supp. 3d 290 (E.D. Pa. 2022) (same); <u>Mason</u>
<u>v. Derryfield Sch.</u>, No. 22-CV-104-SE, 2022 WL
16859666, at *3 (D.N.H. Nov. 7, 2022) (noting
that 29 C.F.R. § 1601.3(b) authorizes the EEOC to
issue right-to-sue letters electronically, and
holding that the statute-of-limitations period
began to run on the date the plaintiff received
an email from the EEOC notifying her of a
decision regarding her charge of discrimination,
even though she did not access the right-to-sue
letter through the portal until later).

<u>Id.</u> at *4.  The district court found that, "[l]ike the body of

the email in <u>Lax</u>, the body of the May 18[, 2022] email put

McDonald's counsel on notice that the agency's final decision

was available."  <u>Id.</u> at *5.  Thus, "because McDonald's counsel

received the email notification on May 18, 2022, it is

irrelevant when her counsel actually followed the link to access

15

the right-to-sue letter on the EEOC portal, or received a copy of the right-to-sue letter via another means." Id. (citation omitted).  The district court then found that McDonald's complaint was untimely filed.  See id.

Here, Asuncion and his counsel received notice on November 8, 2022 that a final agency decision was rendered.  See Somerville Decl., Exhs. B, C.  Although Lax and McDonald are not binding on this Court, they are nonetheless persuasive to the instant case.  Similar to those cases, this Court finds that the ninety-day filing window started on November 8, 2022 when Asuncion and Mr. Luiz received notice that a final agency decision was rendered.  The November 8, 2022 email was unambiguous in relaying to Asuncion and Mr. Luiz that a final agency decision was rendered.  As Asuncion concedes, "[o]n November 8, 2022, the DLA emailed a Final Agency Decision via DoD Safe files."  [Mem. in Opp. at 2.]  Asuncion does not contest that is when he received notice.  Rather, he states that he was unable to access the file.  See id.  But, like in Lax and McDonald, the ninety-day filing window started when Asuncion received the email, not when he was able to access the document. See Lax, 20 F.4th at 1183; McDonald, 2023 WL 4262539, at *5. The issue of when Asuncion opened the document is not relevant to the start of the filing window, but instead goes to whether equitable tolling is applicable.  See McDonald, 2023 WL 4262539,

16

at *5 ("But while her counsel's inability to access the portal may be relevant to the application of equitable tolling, it does not delay the start of the ninety-day filing window." (citing Lax, 20 F.4th at 1182-83)).  Thus, this Court addresses whether equitable tolling applies to Asuncion's untimely Complaint.

## III. **Equitable Tolling**

Because the statutory time limit set forth in 42 U.S.C. § 2000e-5(f)(1) is non-jurisdictional, equitable tolling may apply.  See Irwin, 498 U.S. at 94-95.  "[A] litigant is entitled to equitable tolling of a statute of limitations only if the litigant establishes two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Menominee Indian Tribe of Wisc. v. United States, 577 U.S. 250, 255 (2016) (citation and internal quotation marks omitted).

Asuncion contends equitable tolling applies because Lewis "cites the federal regulation that states 90 days is calculated the [sic] date from the attorney's receipt, not the client's receipt which never happened or from the multiple dates that the Agency attempted to send and resend the FAD encrypted via DoD Safe files."  [Mem. in Opp. at 10.]  Asuncion is mistaken, however, because he and his counsel were both in receipt of the FAD when they were provided notice that a decision was rendered and given the access code to the document.

17

Asuncion's argument does not go to whether equitable tolling applies but restates his argument regarding when he was in receipt of the FAD.

Without providing additional argument as to why equitable tolling applies, Asuncion string cites three cases. See id. (citing Zipes v. Trans World Airlines, Inc., 455 U.S. 385 (1982); Coke v. General Adjustment Bureau, Inc., 640 F.2d 584 (5th Cir. 1981); Canales v. Sullivan, 936 F.2d 755 (2nd Cir. 1991)).  Asuncion fails to state why those cases are relevant or support his equitable tolling argument.  Zipes is irrelevant here because, there, the United States Supreme Court decided the narrow issue of whether the filing of a timely charge of discrimination under Title VII of the Civil Rights Act of 1964 was a jurisdictional issue or a statute of limitations issue subject to waiver, estoppel, and equitable tolling.  See 455 U.S. at 393.

Coke, which is a Fifth Circuit case that was decided before Zipes, held that the time limit provision for Title VII was not jurisdictional and subject to equitable tolling, and further held that there was a genuine issue of material fact as to equitable tolling in the case because there was sufficient evidence to support plaintiff's contention that his employer misrepresented facts that impacted when the plaintiff filed his claim.  See 640 F.2d at 595.  Here, Asuncion makes no contention

18

that DLA made misrepresentations.  In Canales, the Second
Circuit held that equitable tolling may be warranted in cases
where a claimant fails to timely file due to mental impairment.
936 F.2d at 758–59.  Asuncion does not argue he was unable to
timely file his Complaint because of mental impairment.

Lax and McDonald are also instructive as to the issue
of equitable tolling.  In Lax, the Seventh Circuit held that the
district court did not abuse its discretion when it declined to
apply equitable tolling, in part, because Lax "was on notice
that his filing window started on July 17—beyond the fact that
he knew he received the final agency decision that day after
reading the body of the email, the attachment itself stated
that, 'for timeliness purposes,' it would be presumed that he
received it on July 17."  20 F.4th at 1183.  In McDonald, the
district court declined to apply equitable tolling because, even
though the EEOC sent McDonald a copy of the right-to-sue letter
over a month after the original email, "McDonald still had
forty-one days remaining to file her lawsuit."  2023 WL 4262539,
at *6 (citation omitted).

Ultimately, Asuncion failed to diligently pursue his
rights, and no extraordinary circumstances prevented him from
timely filing his Complaint.  Although Mr. Luiz did not read the
FAD until December 5, 2022, there was still about sixty-three
days to file a timely complaint.  This is even more time than

19

the plaintiff in <u>McDonald</u> had.  <u>See</u> <u>id.</u>  If Mr. Luiz was
concerned with whether sixty-three days was adequate time to
draft and file an appropriate complaint for his client, he could
have filed a basic complaint to ensure it was filed within the
deadline and then filed an amended complaint as a matter of
course.  <u>See</u> Fed. R. Civ. P. 15(a)(1); <u>see also</u> <u>Irwin</u>, 498 U.S.
at 96 ("We have allowed equitable tolling in situations where
the claimant has actively pursued his judicial remedies by
filing a defective pleading during the statutory
period . . . .").

        While Mr. Luiz states he "reasonably believed that the
plain reading of 29 CFR § 1614.407 and the email from Ms. Lewis
confirmed that the 90 days to file in federal court commenced
from the date . . . that Plaintiff's counsel was able to
actually download, open and read" the FAD, [Mem. in Opp. at 8,]
this Court is not convinced.  First, Mr. Luiz relies solely on
29 C.F.R. § 1614.407 and fails to acknowledge the language in,
and interplay of, 42 U.S.C. § 2000e-5(f)(1).  This is important
here because the language in § 2000e-5(f)(1) only requires
"giving" of notice of an agency's final decision.  In light of
the "potential discrepancy between" § 1614.407(a) and § 2000e-
5(f)(1), <u>see</u> <u>Lax</u>, 20 F.4th at 1182, diligence would reasonably
require counsel to strongly consider whether interpreting the
deadline in the most favorable way to a client's position would

20

be worth risking a late filing and barring an action from being
pursued.  Given the circumstances of this case, such an
interpretation was not reasonable, particularly because Asuncion
had sufficient time to file a timely complaint even after
Mr. Luiz was able to read the FAD.

      Second, Lewis explicitly informed Mr. Luiz that she
would not issue a second certificate of service.  See Luiz
Decl., Exh. 2 at PageID.224 (email, dated 12/14/22, to Mr. Luiz
from Lewis stating, "[w]e will not issue a new COS since we have
proof you received the FAD via email").  The original
certificate of service states that the FAD was transmitted to
Asuncion and Mr. Luiz on November 8, 2022, see Somerville Decl.,
Exh. B, and Asuncion does not contend otherwise.  After Lewis
informed Mr. Luiz that a new certificate of service would not be
issued, Mr. Luiz acknowledged the DLA's position and replied
"[t]hank you!"  [Luiz Decl., Exh. 2 at PageID.229 (email, dated
12/15/22, to Lewis from Mr. Luiz).]  It is true that Lewis
stated in her December 14, 2022 email that "[a]ccording to 29
CFR 1614 the time starts when you as the Attorney received the
FAD."  [Id.]  But, Lewis made it clear that her position was
that Mr. Luiz would not be issued a new certificate of service
because he previously "received the FAD."  See id.  It is
unclear, then, how Mr. Luiz could have reasonably believed that
Lewis confirmed his position, particularly in light of the clear

21

contradiction of the plain text of the original certificate of
service he received.  At best, Lewis's response was ambiguous,
which would reasonably require a follow-up conversation or an
assumption that, because a new certificate of service would not
be issued, the original certificate of service still controlled.
As in Lax, where the plaintiff had clear notice in the email
attachment about what the date was "for timeliness purposes,"
see 20 F.4th at 1183, so too did Asuncion and Mr. Luiz because
the certificate of service clearly indicated that, "[f]or
timeliness purposes, it shall be presumed that the parties
received the foregoing DLA final agency decision . . . within
five (5) calendar days after it was mailed[,]" *i.e.*, on
November 8, 2022, [Somerville Decl., Exh. B].

        Finally, although Mr. Luiz emailed Somerville and
other DLA employees to request a copy of the FDA, he did not
appear to be in a particular rush, given the length in time he
emailed those employees.  Moreover, despite Somerville's number
being in his emails to Mr. Luiz as well as Lewis's number being
in Somerville's auto-reply email, see, e.g., Mem. in Opp. at 4
(quoting Somerville's auto-reply message containing Lewis's
email address and phone number), Mr. Luiz does not state that he
called them.  Although the DLA employees did not respond
immediately to Mr. Luiz's emails, and Mr. Luiz emailed them
multiple times, Mr. Luiz was not so concerned that he took it

upon himself to call anyone to ensure the issue was promptly and unambiguously resolved.

While the Ninth Circuit has not explicitly ruled on the issue of what constitutes as "receipt" under 42 U.S.C. § 2000e-5(f)(1) and 29 C.F.R. § 1614.407, the case law in other circuits clearly illustrate how strict the deadline to file is enforced for claims under Title VII or the Rehab Act.  See, e.g., Lax, 20 F.4th at 1183 (holding the filing was untimely by one day and that it was not an abuse of discretion to decline to apply equitable tolling); Miller v. Downtown Bid Servs. Corp., 281 F. Supp. 3d 15, 19 (D.D.C. 2017) ("Courts have strictly construed the ninety-day statute of limitations in Title VII cases" and "will dismiss a suit for missing the deadline by even one day" (brackets, quotation marks, and citations omitted)); Figueroa v. Buccaneer Hotel Inc., 188 F.3d 172, 176 (3d Cir. 1999) ("We have held that a claim filed even one day beyond this ninety day window is untimely and may be dismissed absent an equitable reason for disregarding this statutory requirement." (citation omitted)).  Here, Asuncion filed his Complaint almost a month late.

As the Complaint points out: "This case demonstrates that an ounce of prevention is worth a pound of cure." [Complaint at ¶ 63.]  Asuncion had ample time to file his Complaint in a timely fashion, even after DLA sent a PDF version

of the FAD on December 5, 2022.  Asuncion and Mr. Luiz were on
notice when the filing window started.  Instead of taking
preventative measures to either file a possibly defective
pleading within the statutory filing window or to ensure with
certainty that DLA was expressly representing that the filing
window started on December 5, 2022, Mr. Luiz gambled and filed
Asuncion's Complaint under an interpretation that was most
favorable to his client's position despite the very real
possibility that it was not reasonable under the circumstances.
Indeed, this Court finds that Mr. Luiz's interpretation was not
reasonable.  This is not a case "where the complainant has been
induced or tricked by his adversary's misconduct into allowing
the filing deadline to pass."  See Irwin, 498 U.S. at 96.  This
is also not a case where the "notice of the statutory period was
clearly inadequate."  See Scholar v. Pac. Bell, 963 F.2d 264,
268 (9th Cir. 1992) (citations omitted).  The Supreme Court has
made it clear that equitable tolling is applied "only
sparingly."  Irwin, 498 U.S. at 96.  This is, in part, because:

> Procedural requirements established by
> Congress for gaining access to the federal courts
> are not to be disregarded by courts out of a
> vague sympathy for particular litigants.  As [the
> Supreme Court] stated in Mohasco Corp. v. Silver,
> 447 U.S. 807, 826 (1980), "in the long run,
> experience teaches that strict adherence to the
> procedural requirements specified by the
> legislature is the best guarantee of evenhanded
> administration of the law."

24

Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 152 (1984).

Although this Court has sympathy for Asuncion, sympathy is not enough to overcome the finding that his Complaint was untimely filed and equitable tolling is not warranted.  Defendant's Motion is granted to the extent this Court finds there is not a genuine issue of material fact as to whether Asuncion's Complaint was untimely filed.  See Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").  Because equitable tolling is not warranted in the instant case, summary judgment is granted in favor of Defendant.

**CONCLUSION**

On the basis of the foregoing, Defendant's Motion to Dismiss Complaint [ECF No. 1], or in the Alternative for Partial Summary Judgment, filed June 6, 2023, is HEREBY GRANTED.  The Motion is GRANTED to the extent that summary judgment is granted in favor of Defendant.  The Clerk's Office is directed to enter judgment and close the case on **September 29, 2023,** unless a timely motion for reconsideration of the instant Order is filed.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, September 14, 2023.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

RODOLFO T. ASUNCION, JR. VS. THE HONORABLE LLOYD J. AUSTIN, III, SECRETARY OF DEFENSE; CV 23-000119 LEK-KJM; ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COMPLAINT [ECF NO. 1], OR IN THE ALTERNATIVE FOR PARTIAL SUMMARY JUDGMENT